## Case No. 2,446.

### CARRINGTON et al. v. BRENTS et al.

[1 McLean, 167.] [1]

Circuit Court, D. Kentucky. May Term, 1832. [2]

STATUTE OF FRAUDS — SUIT AGAINST INFANT—NOTICE—SPECIFIC PERFORMANCE—APPEARANCE.

1. A parol contract in Virginia, in 1787, for land in Kentucky, where the consideration was paid, was not void by the statute of frauds.
[See note at end of case.]

2. The courts of Virginia sanctioned the contract and decreed a conveyance, the vendor being a resident of that state.
[See note at end of case.]

3. In a suit against an infant, a notice should be served on him, and a guardian ad litem appointed by the court.
[Cited in O'Hara v. McConnell, 93 U. S. 152; Woolridge v. McKenna, 8 Fed. 669.]

4. But so far as the proceeding is only considered as having been examined by the party, and afforded notice of the title asserted, it is not important that the proceeding should be strictly regular.

5. That which puts the party on enquiry, is notice; but, in this case the notice is admitted.
[See note at end of case.]

6. A decree in Virginia cannot operate on the title to land in Kentucky. But having jurisdiction of the person, the court may enforce its decree. The statute of frauds in Kentucky, cannot operate on a contract made before the adoption of the statute.

7. A voluntary appearance after the revival of a suit, is a waiver of process. The doctrine of lis pendens applies only where the court has jurisdiction over the thing.

[In equity. Bill by Sarah Carrington and others, heirs of George Carrington, against William Caldwell, Isaac Caldwell and Samuel Brents.]

Mr. Wickliffe, for complainants. Mr. Munroe, for defendants.

OPINION OF THE COURT. This bill has been filed to obtain a legal title to certain tracts of land claimed by the defendants. The complainants allege that at October

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in Caldwell v. Carrington, 9 Pet. (34 U. S.) 86.]

term, 1817, in the county court of Halifax county, in the state of Virginia. Sarah Carrington, the complainant, as devisee of her husband, George Carrington, obtained a final decree against John R. Williams, heir at law of John Williams, deceased, for a conveyance of all the interest which was vested in him, as heir at law, to John Williams, for all the military lands held by him in the state of Kentucky. That the following tracts were embraced by this decree, to wit: one survey of a thousand acres in the county of Adair, near the town of Columbia, number 158. Three hundred and fifty acres on Beaver creek, in the county of Warren, No. 155. Five hundred acres situated on the same creek, No. 227. One thousand acres south of the Tennessee river, near the Iron banks, and one other thousand acres adjoining the lands of Gerault. For the title of these tracts of land the complainant states, her testator, in May, 1803, in the same court, obtained a decree against the said John R. Williams, who was then an infant, and that his guardian should make the conveyance. That in virtue of said decree, John B. Scott, as guardian, transferred to her testator the title to said lands. That afterwards, on the 18th March, 1820, John R. Williams having arrived at full age, executed deeds in due form for the above tracts of land. The bill further states, that after Williams had arrived at full age, he took an appeal from the decree above stated, to the superior court of chancery, which affirmed the decree of the inferior court. That with a full knowledge of the complainants' claim, the defendants purchased the lands above described of John R. Williams, and received from him such conveyance as he was able to make for the same; and that for a part of the land the legal title is vested in the defendants, and for a part they hold an apparent equitable title. And the complainants pray that the proper officer may be enjoined from issuing patents for the lands unpatented, and that the court would decree a conveyance of all title to the above lands, both legal and equitable, which may be vested in the defendants, to the complainants.

William Caldwell, in his answer, states that he purchased the thousand acres of land charged in the bill as lying in Adair county, from John R. Williams, for a full consideration, and received an assignment of the plat and certificate, and that on the 12th September, 1816, he obtained a patent for the same. He admits that before he made this purchase, he had been informed of the claim set up by the complainant for the land, but alleged that on enquiry, he believed it was not valid, as the contract existed only in parol, and could not, therefore, be enforced. He states that in the year 1818, he, Samuel Brents and Isaac Caldwell, purchased from John R. Williams the two thousand acre tracts of land named in the bill, west of the Tennessee river, and paid for

them or agreed to pay a valuable consideration; and he denies that he had any other notice of the claim of the complainants, except as above stated. And he alleges that the deed from John R. Williams stated in the bill, was obtained by the complainants through fraud and oppression, by imprisoning the said Williams under the decree of the court referred to.

Isaac Caldwell, in his separate answer, admits the purchase of the two thousand acre tracts, in connection with Brents and William Caldwell, for which he paid or agreed to pay a valuable and adequate consideration. That before he made the purchase, he examined the decree against Williams, entered by the county court of Halifax in 1803; and on taking the advice of several counsellors, he was induced to make the purchase, under the full belief that the decree could not operate upon the title, or prevent the defendant, Williams, from making a valid conveyance of his right. He alleges that the deed set up by the complainants, was not made by Williams under the decree obtained against him, but was obtained from him fraudulently, through the procurement of the complainants.

In his answer, Samuel Brents states, that in August, 1815, and 5th January, 1818, he entered into contracts with Williams for eight hundred and fifty acres of the land in controversy, for which he paid a valuable consideration, and of which he is now in possession. He admits that in company with his co-defendants, he purchased the two thousand acres described. That before his purchases he had notice of the claim of Carrington; but as he considered it to be under an illegal and void contract, he did not regard it, nor the proceedings of the Virginia court referred to; as that court could give no decree which could operate on the lands in the state of Kentucky. All the defendants deny that any binding contract was ever made by John Williams, the ancestor of John R. Williams, for the sale of the lands in controversy to Carrington; and also deny that the decrees in Virginia, under the circumstances, embarrass their title; and they set up as a bar to the complainants' claim, the statute of frauds and perjuries.

In support of the bill, several records of the proceedings of the county court of Halifax, and of the superior court of chancery for the Lynchburg district, are read in evidence. The first one contains a proceeding in chancery before the county court of Halifax, in which the testator of the complainants was plaintiff, and John R. Williams, by his guardian was made defendant, and a final decree was entered against the defendant, that he should transfer by his guardian, to the complainant, the right descended to him from his ancestor, to the lands in dispute. The second shows a proceeding in chancery by Sarah Carrington, the devisee of her husband George, deceased, setting forth the original contract against John R. Williams, heir at law of his father, John Williams. In this second bill a reference is made to the first suit and the proceedings therein are made a part of the second suit. To this bill, the defendant having arrived at full age, filed his answer, and at October term, 1817, on a hearing of the bill, answer examinations of witnesses; and also the bill answer examinations of witnesses, in the former cause, a final decree was entered "that the defendant should forthwith assign to the plaintiff, in a proper and legal manner, the survey and other title papers in the original bill mentioned, so as to enable the plaintiff to obtain patents in her own name for the lands in the bill mentioned."

From this decree an appeal was taken to the superior court of chancery for the Lynchburg district, and the 19th May, 1818, the decree of the inferior court, was in all things affirmed. On the 19th October, 1819, the complainant again filed her bill in the superior court of chancery for the Lynchburg district, setting forth that during the pendency of the former suit, the defendant John R. Williams had obtained patents for the land embraced by the decree, and on demand refused to convey the title to the complainant, etc. And at term 1820, the court decreed that the defendant "do by proper deeds, convey to the plaintiff in fee simple, the several tracts of land in the bill mentioned, with warranty against himself and his heirs, and all persons claiming under him." In pursuance of this decree, Williams executed a conveyance the 18th March, 1820.

The contract between Williams and William Caldwell, for one thousand acres in Adair county, is in evidence, and bears date the 30th August, 1815. In this agreement there is the following condition: "And the said Williams agrees that said Caldwell shall not be bound to pay any further part of the consideration aforesaid, except what is this day paid, until he, the said Williams, shall settle the dispute between himself and the heirs and representatives of George Carrington, deceased, concerning the title of said land, and shall procure a clear title to the said land in his own name, and transfer the same to the said Caldwell, as set forth in the agreement." On the same day Williams entered into a written agreement by which he bound himself, whenever called on, if the claim of the said Carrington is not settled and removed from the land, to take such step for the security of the said William Caldwell, as himself and his agent may think best; as it is the fair understanding of the contract, that in case the said land should be taken from the said Caldwell, his heirs, etc., that the purchase money with interest is to be refunded."

The agreement between Williams, William and Isaac Caldwell, and Samuel Brents, bears date the 6th January, 1818; and in

which Williams bound himself "to use due diligence in having extinguished and quieted the claims of George Carrington's heirs, etc., and the consideration was to be paid so soon as the above claims should be extinguished, and the said Williams was able to make a good title." In May, 1817, Isaac Caldwell wrote a letter to John R. Williams, from which it appears he had arrived from Virginia a short time before, and that while there he made arrangements for the further prosecution of the suit against Williams, with the view of reversing the decree; and in a postscript he says: "Use all diligence in your power to push the cause to a speedy and successful termination, that you may get your money, and we all rest in peace." On the 7th November following, Caldwell again wrote to Williams, urging him to prosecute an appeal, or writ of error to reverse the decree against him, and expressing a decided opinion that it was erroneous; and he advises Williams by no means to execute the decree. That if he should avoid doing this, he might secure to himself almost a fortune, whereas, if he were to execute the decree he would be answerable for the money he had received.

The will of George Carrington, duly authenticated, is exhibited in evidence, by the complainant, from which it appears that the complainant is his sole devisee. Sarah Carrington, the complainant, died after Isaac Caldwell filed his answer, and he has not answered the bill of revivor, which was filed by her legal representatives. No subpoena seems to have been served upon him, but publication has been made as a substitute for the process. It is objected that this proceeding is irregular and that the bill, as against Isaac Caldwell, must be dismissed. No rule of practice, it is contended, has authorized such a procedure, nor is it authorized by any statute of the state, if such statute could regulate the practice of this court. The object in giving notice to a defendant of the revival of a suit is to procure his appearance. If after the filing of the bill of revivor there be a voluntary appearance, the object is attained; and it would seem not to be essential that process should be served on him to compel him to do that which he has already done. No new facts are alleged in the bill of revivor, as it regards the merits of the controversy, and if in any such case the answer of the defendant be necessary, it can only be so to controvert the right of those in whose name the bill of revivor is filed. In this case the devisees of Sarah Carrington are identified by legal proof, and the defendant Isaac Caldwell appears by his counsel, and the whole merits of the case are investigated. It would seem therefore that the purposes of justice are answered, and by no possibility can any injury result to the defendant by considering his voluntary appearance as a waiver of process under the bill of revivor.

An objection is urged against the right to a decree on this bill, on the ground that the defendants claim under distinct titles, and therefore they cannot be united in one suit. This would be a fatal objection if it were not obviated by a statutory provision of this state. Under this statute the complainant may file his bill against several defendants, though they claim under distinct titles, and have no common interest in the land in controversy. The right of the complainants to a decree is mainly rested upon the proceedings in chancery, and the deed which was executed by Williams under those proceedings. No attempt is made to establish the original contract between George Carrington and John Williams, by proof beyond what was before the chancery courts in Virginia, and which is certified in the records used in evidence. By this evidence the original contract was made in 1787 or 1788. Paul Carrington, the father of George, owned a tract of land in the county of Halifax, Virginia, called "Dry Branch," containing five hundred and ninety-six acres; the whole of which, at the close of the revolutionary war he gave to his son George, put him in possession, delivered to him the title papers and directed him to prepare a deed. In 1787 or 1788, Paul Carrington, at the instance of his son George, conveyed the above land to John Williams; in exchange for his military lands in Kentucky. Williams afterwards sold the Dry Branch tract to Camp for four hundred pounds. This was the original contract, as is satisfactorily proved by the evidence. In behalf of the defendants it is contended, that the doctrine of lis pendens has no application in the present case. That although the defendants may have had notice of the pendency and determination of the first suit, brought by Carrington in Halifax county, it can have no effect to prejudice their rights subsequently acquired. This suit, it is alleged, was a nullity, as it was brought against John R. Williams, while he was an infant, and no guardian ad litem was appointed, to defend the suit. That his mother who filed an answer as his guardian was not authorized to defend, not having been appointed for that purpose by the court; and that she was substituted for John B. Scott, who also answered, and against whom the decree was entered. That as it does not appear that he was the guardian of the defendant or authorized to appear for him, by appointment of the court, both the decree which was entered in the case and the consequent transfer by him, of the plats and certificates for the land in controversy are void; and had no effect to prejudice the right of the infant, or to charge the defendants who afterwards purchased, with notice.

It does not appear that in the above suit, process was served on the infant, nor that the guardian ad litem was appointed by the court, and for these omissions or errors in the proceedings the decree might be reversed,

by an appellate court; but when the decree is used as matter of evidence, it cannot be disregarded or treated as a nullity. Much may be presumed in favor of the proceedings of a court, regularly constituted and which exercises a general jurisdiction; and especially after the lapse of many years. But this point does not seem to be material in the present enquiry. Whether the proceedings in the first suit were perfectly regular or not; whether they were erroneous or not, cannot be important, as the proceeding and the evidence which were examined by the defendants or might have been examined by them, as they had notice, in fact, of the pendency of the suit, and of the decree, was a sufficient notice of the equity asserted in the suit and sanctioned by the decree.

The doctrine of lis pendens does not apply in the case. To make the pendency of a suit notice, so as to affect the conscience of a purchaser, it is essential that the court have jurisdiction over the thing. 4 Fonbl. b. 2, c. 6, § 3, note n; Sorrell v. Carpenter, 2 P. Wms. 482; Worsley v. Earl of Scarborough, 3 Atk. 392; Bishop of Winchester v. Paine, 11 Ves. 194; Murray v. Ballou, 1 Johns. Ch. 566. But in this case the courts in Virginia could make no order or decree which could operate upon the land in Kentucky. Having jurisdiction over the person of the defendant, they might well investigate the subject matter of the contract, but they could only reach the title to the land through the personal act of the defendant.

That the defendants had notice of the complainants' title is admitted in their answers, and it is also shown by the terms of the contracts for the land. In one purchase the whole of the consideration was reserved, and in another the greater part of it, until the final adjustment of this claim. And John R. Williams binds himself to return, with interest, the part of the purchase money, which he received, provided he should not be able to make a good title. These facts settle the question of notice. It was not only sufficient to put the defendants on enquiry, but they have guarded their interests by withholding the purchase money, and by an express obligation on the part of Williams, he is to refund, with interest, the money received. That part of the consideration paid, must be considered as having been paid, on the personal responsibility of Williams, on his failing to make a good title. The letters of Isaac Caldwell also show this fact.

But the main ground on which the right of the complainants is resisted is, that the contract was not reduced to writing, and it being for the sale of real estate, it is void by the statute of frauds. The statute of frauds of Kentucky, is relied on, but as this contract was made long before the state of Ken-

tucky was organized, it is clear that no statute passed or adopted by Kentucky can operate upon the contract, if valid at the time it was made. That the contract was valid in Virginia is established by the judicial sanction which has been given to it. It has not only been sanctioned by the decree of the county court of Halifax, but by the superior court of chancery for the district; and a deed has been executed by Williams, which conforms to the laws of Kentucky, under the final decree. The original contract on the part of George Carrington was executed, by conveying to the ancestor of John R. Williams, the land in Virginia, which was given in exchange for the land in Kentucky named in the bill, and according to the well established rule in Virginia, took the contract out of the statute of frauds. It was not only in part performed by Carrington, but fully executed; so that it did not come within the statute by the rule established in England or in Virginia. And though a different rule be established in Kentucky, it can only operate on contracts made after the enactment of the Kentucky statute. It is therefore clear, whether the complainants proceed upon the original contract, as proved in the original records from Virginia; or on the decree of the superior court of chancery, in the Lynchburg district, as fixing the right of the complainants, that they are equally entitled to the aid of this court.

The facts of the case, connected with the action of the courts of chancery in Virginia, and the notice to the defendants, present a case for relief clear of all difficulty. The court will, therefore, decree that the defendants convey all their title and interest to the land in controversy, to the complainants.

This case was removed to the supreme court by an appeal, and the above decree was affirmed. 9 Pet. [34 U. S.] 86.

[NOTE. Defendants appealed to the supreme court of the United States, which affirmed the decree of the circuit court, upon the grounds, as set forth in the opinion of Mr. Chief Justice Marshall, that the exchange by John Williams of his military land for the Dry Branch tract was fully established by the testimony; that the complete execution of the contract on the part of George Carrington by conveying the Dry Branch tract to the vendee of John Williams supplied in law the want of a memorandum in writing, and that such construction of the statute of frauds by the courts of Virginia at the time the contract was made, the land then being within that state, formed the law of the contract, and the change of the law afterwards made in Kentucky could not affect the validity of the contract; and, furthermore, that the proof unequivocally showed that defendants had received notice of the contract made by Carrington with John Williams, and that, having, with the exception of Brents, purchased equitable titles, were bound to notice prior equities. Caldwell v. Carrington, 9 Pet. (34 U. S.) 86.]