[No. 376.   March 20, 1889.]

UNITED STATES OF AMERICA, PLAINTIFFS IN ERROR, v. THE MAXWELL LAND GRANT COMPANY, DEFENDANT IN ERROR.

PUBLIC LANDS—PATENT, BILL TO SET ASIDE IN TERRITORIAL DISTRICT COURT—PLEA, FORMER ADJUDICATION COVERING SAME LANDS ON SIMILAR BILL IN U. S. CIRCUIT COURT FOR DISTRICT OF COLORADO—JURISDICTION.—A proceeding by bill in chancery by the United States, in the territorial district court, to set aside a patent and survey made of lands embraced in the patent situated in New Mexico, founded on alleged frauds by the claimant and others, is barred by a former adjudication covering the same lands on a similar bill brought by the United States in the circuit court of the United States for the district of Colorado, that court having acquired jurisdiction of the subject-matter by personal service on the defendant.   The jurisdiction of a court of chancery is sustainable, in case of fraud, wherever the person be found, although lands not within the jurisdiction of the court may be affected by the decree.   Massie v. Watts, 6 Cranch, 148.

ERROR, from a decree in favor of defendant, to the First Judicial District Court.   Decree affirmed.

The facts are stated in the opinion of the court.

THOMAS SMITH, United States district attorney, for the United States.

It is only where the same matters are directly and distinctly in issue that a decree or judgment becomes a bar in a subsequent suit.   Richardson v. City of

Boston, 19 How. 782; Russell v. Place, 94 U. S. 606; Note to Lea v. Lea, 96 Am. Dec. 779, and cases cited.

A decree in chancery must be construed in reference to the issue made in the prayer for relief, and other pleadings, and which these show it was meant to decide. Graham v. Railroad Co., 3 Wall. 704.

Circuit courts sit for the districts in which the court is held, and are bounded by their local limits. Toland v. Sprague, 12 Pet. 300.

Where the subject-matter is local, and lies beyond the limits of the district, the circuit court sitting in the district has no jurisdiction. Northern Ind. Railroad Co. v. Michigan Central Railroad Co., 15 How. 233.

A decree of a court of equity made in one state can not transfer the title to lands lying in another state. Davis v. Headley, 22 N. J. Eq. 115; Carrington v. Brents, 1 McLean, 167; Massie v. Watts, 6 Cranch, 148; Hawley v. James, 7 Paige Ch. 213 (32 Am. Dec. 623); Proctor v. Ferebee, 2 Ired. Eq. 146; Shepherd v. Ross Co., 7 Ohio, 271; Burnley v. Stephenson, 24 Ohio St. 474.

FRANK SPRINGER for defendant in error.

Where simultaneous actions are pending on the same cause of action between the same parties in different states, a judgment in either will bar the further prosecution of the other. Freeman on Judgments, sec. 221; Wells on Res Adjudicata, secs. 292, 530; The Tubal Cain, 9 Fed. Rep. 834 (20 Meyer's Fed. Dec. 468); McGilvery v. Avery, 30 Ver. 538; Rogers v. Odell, 39 N. H. 452; Bank v. Wheeler, 28 Conn. 433; Child v. Eureka Co., 45 N. H. 547; Duffy v. Lytle, 5 Watts, 130; Caseboom v. Mowry, 55 Pa. St. 422.

The same rule applies to judgments in the federal courts. Freeman on Judgments.

The identities as to parties, subject-matter, and

cause of action, are required to sustain the plea of res adjudicata.  Freeman on Judgments, secs. 248-260; Aurora v. West, 7 Wall. 82; 1 Dan. Chy. Pr. 659.

A decree dismissing a bill in chancery is a final determination, and constitutes a bar to further litigation of the same subject between the same parties. Durant v. Essex Co., 7 Wall. 107; 1 Dan. Chy. 606-659; Freeman on Judgments, sec. 248.

A fact which has been tried and decided by a court of competent jurisdiction, can not again be contested between the same parties, in the same or any other court.   Hopkins v. Lee, 6 Wheat. 109; The Tubal Cane, 9 Fed. Rep. 834 (20 Fed. Dec. 468), and cases cited; Flanigan v. Thompson, 7 Fed. Rep. 177 (20 Fed. Dec. 464); Danscher v. Prentiss, 22 Wis. 316; Freeman on Judgments, sec. 249; Wells on Res Adjudicata, secs. 6, 9, 12; Beloit v. Morgan, 7 Wall. 619.

A judgment on the same cause of action is conclusive between the same parties, not only as to every matter actually in issue, but as to every other admissible matter which might have been offered, or was necessarily involved.   Wells on Res Adjudicata, sec. 248, et seq. 251, 424; Freeman on Judgments, sec. 249; Cromwell v. Sac. Co., 94 U. S. 351; Smith v. Ontario, 18 Blatchford, 454 (20 Fed. Dec. 508); Gould v. R. R. Co., 91 U. S. 526; Radford v. Folsom, 3 Fed. Rep. 199; Bates v. Spinner, 45 Ind. 493; Covington v. Sargent, 27 Ohio St. 237; Tate v. Hunter, 3 Strob. Eq. (S. C.) 139; Lea v. Lea, and note, 96 Am. Dec. 775, et seq.

A party can not try his action in parts.  The judgment is conclusive, not only of the matters contested, but as to every other thing within the knowledge of complainant which might have been made a ground for relief in the first suit.  Freeman on Judgments, sec. 272, p. 296.

The discovery of new evidence forms no exception to the foregoing rules. Freeman on Judgments, sec. 249; Kilheffer v. Kerr, 17 Serg. & Rawle, 319; Wells on Res Adjudicata, sec. 369.

Where the parties are before the court, by process or appearance, a court of equity has jurisdiction to make decrees concerning the title to land in another state, as to enforce a sale, compel parties to convey, and to enforce specific performance, to operate on the holder of a legal title acquired by any species of malafides, etc. Wells on Res Adjudicata, secs. 523, 524; Wells on Juris., sec. 116; Watts v. Waddle, 6 Pet. 397; Low v. Massey, 41 Vt. 393; McGregor v. McGregor, 9 Iowa, 78; Story's Conflict of Laws, 543; Massie v. Watts, 6 Cranch, 148, 160; R. R. Co. v. R. R. Co., 15 How. 233.

Where a question of jurisdiction in a case must have been considered, it should be treated as res adjudicata between the same parties in every other but an appellate forum. Moch v. Ins. Co., 4 Hughes, 61 (11 Fed. Dec. 197).

Where the merits of a case have been passed upon by the supreme court, it is too late to raise the question of jurisdiction. Whatever was before the supreme court, and was disposed of, must be considered as finally settled. Skillern v. May, 6 Cranch, 267; Sibbald v. U. S., 12 Pet. 492; Wells on Juris., sec. 194.

HENDERSON, J.—On the twelfth day of January, 1886, the plaintiff in error filed a bill in chancery in the First district, the object of which was to obtain a decree vacating and setting aside the patent issued by the United States on the nineteenth day of May, 1879, to Charles Beaubien and Guadalupe Miranda, and to set aside and vacate a survey made of the lands embraced in the patent situated in New Mexico, and to reinvest in the United States the title to the lands so

covered by the survey and patent.   The bill is founded
upon alleged frauds committed by the claimant and
others in making the survey, whereby the officers of
the government were deceived and induced to issue the
patent to the claimants.   On May 12, 1888, by leave
of the court, an amendment to the bill was filed.   On
the fifteenth day of February, 1886, the Maxwell Land
Grant Company, the principal defendant, filed its
answer to the bill.   On the same day the Atchison,
Topeka & Santa Fe Railroad Company filed its answer.
Afterward, on the twenty-seventh day of August,
1887, the Maxwell Land Grant Company, by leave of
the court, filed a plea in bar of the action, setting forth
certain proceedings had in the circuit court for the
Eighth judicial circuit of the United States, sitting
within the district of Colorado, in which it is alleged
that the subject-matter and the parties are identical
with the subject-matters and parties involved in this
suit, and that by the consideration, judgment, and
decree of that court the right claimed under the bill
was adjudged and finally determined against the plain-
tiff, and in favor of the Maxwell Land Grant Com-
pany.   The plea was accompanied by a large number
of exhibits in proof of the facts set up in it.   On the
twelfth day of May, 1888, plaintiff in error filed a
motion to strike out and set aside the plea filed by the
Maxwell Land Grant Company, on the ground of
insufficiency.   On the same day this motion came on
to be heard, and was overruled by the court, and there-
upon the issue joined on the plea of former adjudica-
tion was heard and found to be sufficient in law and
true in fact.   The United States brought error.

Plaintiffs assign three grounds of error, as fol-
lows:   (1) Error committed by the court in overruling
complainant's motion to strike out defendant's plea in
bar; (2) error of the court in sustaining the plea as
sufficient in law to bar the further prosecution of the

suit; (3) error of the court in finding as true the facts alleged in the plea.

On these assignments of error counsel have argued but one proposition, divided into two grounds: (1) Does the plea show the subject-matter of the Colorado suit to be the same as that stated in complainant's bill? And, if so, does the record of the final judgment pleaded show that the circuit court of the United States for the district of Colorado obtained or could have obtained jurisdiction over that portion of the grant lands covered by the patent lying within the limits of the territory of New Mexico? The plea alleges, and the proofs offered show, that in the month of August, 1882, the United States brought a suit in chancery in the United States circuit court for the district of Colorado, to set aside and annul the patent issued to Beaubien and Miranda for the lands now known as the "Maxwell Land Grant." The lands embraced in the patent are situate partly in Colorado and partly in New Mexico. The principal defendant, the Maxwell Land Grant Company, held the legal title to the land, and was a corporation doing business both in Colorado and New Mexico. Being duly served with process, it appeared and answered the bill. Various amendments were made to the bill from time to time, until finally the cause was determined on its merits, upon a bill which prayed that the patent be canceled upon the following grounds: (1) Want of authority to issue it; (2) inadvertence and mistake; (3) fraud and misrepresentation, by which the United States officers were deceived. The bill was dismissed in the circuit court, and on appeal to the supreme court of the United States the cause was finally decided there in March, 1887. The judgment of the court below was affirmed. Maxwell Land Grant Case, 121 U. S. 325; Same Case, on rehearing, 122 U. S. 365. From an inspection of the opinion

*[margin note:]* PUBLIC lands: patent, bill to set aside: res adjudicata.

of the court it will be seen that the case was vigorously litigated and thoroughly considered by the courts. In the opinion on the rehearing the court said: "We are entirely satisfied that the grant, as confirmed by the action of congress, is a valid grant; that the survey and the patent issued upon it, as well as the original grant by Armijo, are entirely free from any fraud on the part of the grantees, or those claiming under them; and that the decision could be no other than that which the learned judge of the circuit court below made, and which this court affirmed." 122 U. S. 365. The bill in this case is almost word for word a copy of the bill in the Colorado court on which the cause was finally decided. In both suits the court was asked to decree the invalidity of the patent as an entirety. The stating and charging portions of the bills are identical in substance, and so is the prayer, so far as the court had power to grant relief. The allegations contained in the Colorado bill were sufficiently broad to meet the proofs offered, and covered every cause of action on which relief could be granted, and it would be difficult to see how an amendment could be made the effect of which would be to change the issue presented by the bill and amendment upon which the cause was finally decided. After the filing of the plea in this cause the plaintiff, by leave of the court, filed an amendment to the bill. The substance of this amendment is a more specific statement of the means employed by Elkins, Marmon, and Maxwell in procuring the lines of the grant to be extended beyond the original boundary lines as fixed by the Mexican authorities when possession was delivered to its grantees, and the arts practiced by them upon the officers of the government in causing the survey to be approved and patent issued covering a large body or tract of land not originally or rightfully covered by the grant from Mexico. By stipulation the matter embraced in the amendment was

answered by the plea already filed. That the subject-matter and parties to this suit are identical with the subject-matter and parties to the suit in Colorado in all essential respects can not be denied. We, however, have more difficulty ·in reaching a satisfactory conclusion on the other question discussed, viz., whether the JURISDICTION of circuit court of the United States for the United States circuit court for district of Colorado had jurisdiction to Colorado to ren-der decree render a decree affecting the title to lands affecting lands in New Mexico. lying in New Mexico. Appellant's counsel insists that the Colorado decree pleaded here is not a bar to this action, for the reason that a portion of the lands covered by the patent are situate in New Mexico, and the decree must be regarded as a nullity, so far as it seeks to affect the title to lands not within the jurisdiction of the court.

The following cases are relied upon to support this proposition. Toland v. Sprague, 12 Pet. 300; Northern Ind. Railroad Co. v. Mich. Central Railroad Co., 15 How. 233; Carrington v. Brénts, 1 McLean, 167; Massie v. Watts, 6 Cranch, 148. The last cited case is a very instructive one, and we think in point here. Chief Justice MARSHALL, delivering the opinion, said: "This suit having been originally instituted in the court of Kentucky for the purpose of obtaining a conveyance of lands lying in the state of Ohio, an objection is made by the plaintiff in error, who was the defendant below, to the jurisdiction of the court by which the decree was rendered. Taking into view the character of the suit in chancery brought to establish a prior title originating under the land law of Virginia, against a person claiming under a senior patent, considering it as a substitute for a caveat introduced by the peculiar· circumstances attending those titles, ·this court is of opinion that there is much reason for considering it as a local action, and for confining it to the court sitting within the state in which the lands lie. Was this

cause, therefore, to be considered as involving a naked question of title; was it, for example, a contest between Watts and Powell—the jurisdiction of the circuit court of Kentucky would not be sustained. But where the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of mala fides practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found, and the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential points on which the case depends, does not seem sufficient to arrest that jurisdiction. In the celebrated case of Penn v. Lord Baltimore, the chancellor of England decreed a specific performance of a contract respecting lands lying in North America. The objection to the jurisdiction of the court in that case, as reported by Vesey, was not that the lands lay without the jurisdiction of the court, but that, in cases relating to boundaries between provinces, the jurisdiction was exclusively in the king and council." Still quoting from the opinion of the lord chancellor, he says: "The strict primary decree of a court of equity is, he says, in personam, and may be enforced in all cases where the person is within its jurisdiction. In confirmation of this position he cites the practice of the courts to decree respecting lands lying in Ireland and in the colonies, if the person against whom the decree was prayed be found in England." Reference is made to the cases of Earl of Kildare v. Sir Maurice Eustace Fitzgerald, 1 Vern. 419, and Toller v. Carteret, 2 Vern. 494. Subsequently to these decisions was the case of Penn v. Lord Baltimore, 1 Ves. Sr. 444, in which the performance of a contract for lands lying in North America was decreed in England. Continuing, the chief justice said: "Upon the authority of these cases, and of

others which are to be found in the books, as well as
upon general principles, this court is of opinion that in
a case of fraud of a trust, or of contract, the jurisdic-
tion of a court of chancery is sustainable wherever the
person be found, although lands not within the juris-
diction of the court may be affected by the decree."
Massie v. Watts, 6 Cranch, 148.  The United States
brought suit in the circuit court of the United States
for the district of Colorado, to set aside, vacate, and
cancel the patent assailed here.  The bill in that case
is grounded upon allegations of fraud, committed by
the patentees and others holding through or under
them, by means of which the officers of the plaintiff
were deceived into issuing and delivering the patent.
Fraud in various ways was charged against the grantees
under the patent, and the patent, as an entirety, was
involved in the issue raised, heard, and finally deter-
mined in the circuit and supreme courts of the United
States.  It is quite clear that, had the United States
succeeded in that suit, the decree would have affected
the title to the lands embraced in the patent lying in
New Mexico.  Personal service was had upon the Max-
well Land Grant Company in that suit, and an appear-
ance duly entered, and the suit, after long delays,
finally decided, declaring the patent valid for the lands
covered by it, wherever situated.  The final judgment
in that suit was intended to be, and we think was, con-
clusive upon the United States and all persons claiming
through or under it, whether the lands covered by the
patent were located in Colorado or New Mexico.  The
suit was instituted and contested through the courts to
a final decision in the court of last resort, solely, or
mainly, at least, upon the ground that such frauds had
been committed by the original grantees and those
claiming under them in locating the lands, and extend-
ing the true boundaries thereof in such manner as to
deceive the officers of the United States, and thereby

cause them to issue the patent, that a court of equity would annul the patent. The court found that there was no fraud proven in the case, and that the patent was legal and valid, and free from the taint of fraud. The issue directly involved in the controversy was that of fraud practiced upon the United States through its officers. The determination was against the truth of the facts alleged, and the United States, like any other suitor in a court of justice, is bound by the final judgment of courts of competent jurisdiction, when it elects to litigate any question of fact in the courts. There is no doubt that a judgment or decree necessarily affirming the existence of any fact is conclusive upon the parties, or their privies, whenever the existence of that fact is again in issue between them. Duchess of Kingston's Case, 11 State Trials, 261; Crandon v. Leonard, 4 Cranch, 436; Peay v. Duncan, 20 Ark. 85; Lore v. Truman, 10 Ohio St. 45; Freem. Judgm., sec. 249; Wales v. Lyon, 2 Mich. 276. The supreme court of the United States affirmed in distinct terms that there was no fraud committed in procuring the patent to be issued by the patentees, or those claiming under them; that the patent was legal and is the evidence of the legal ownership of all the lands embraced in it, or covered by it. It directly affirmed the nonexistence of fraud; and, having done so, in a proper case, the courts of the country will not permit the plaintiff in another suit to controvert this judicially established fact, where the issue is between the same parties, or their privies. The United States having exhausted its power in a fruitless effort to cancel this patent, it becomes the duty of the courts and the people to abide the final judgment of the highest tribunals to which a controversy can be appealed, and to seek redress for meritorious grievances, if any exist, at the hands of a just and generous government. The judgment of the court below is affirmed.

LONG, C. J., and BRINKER, J., concur.