ELIZA ASHTON v. THE DETROIT CITY RAILWAY COM-
PANY.

*Practice in circuit courts—Demurrer—Negligence—Choice between
two dangers—Evidence.*

1. Where a defendant does not elect to stand upon his demurrer,
   when overruled, but pleads issuably, and goes to trial on the
   merits, an assignment of error on the overruling of the demur-
   rer will not be considered.

2. Plaintiff sued defendant for injuries received in alighting from
   one of its cars while in motion, and was allowed to testify, as
   showing her reason for so doing, that on a former occasion
   the car on which she had taken passage left the main line
   before reaching her destination, and was driven into defend-
   ant's barn, where on leaving it she was insulted by a man in
   said barn; and that on the occasion of the accident the car
   again started for the barn, when she rang the bell, but the sig-
   nal was disregarded, and for fear of a repetition of her former
   experience she left the car and was injured, and said testimony
   is held to have been competent and relevant.

3. In such a case the question whether the treatment the plaintiff
   received at defendant's barn was sufficient to justify her belief
   that she was avoiding an actually impending danger, into
   which she was being taken, by leaving the car, is a question
   for the jury, and not for the court.

4. A physician who is called to treat a person for an injury, when
   sworn as a witness in a suit to recover damages for the same,
   may state how the patient described the pain from which she
   was suffering, and may describe the patient's actions, as tending
   to inform the jury of the patient's condition.

Error to Wayne. (Hosmer, J.) Argued November 1,
1889. Decided December 28, 1889.

Negligence case. Defendant brings error. Affirmed.
The facts are stated in the opinion.

*Brennan & Donnelly* and *Sidney T. Miller*, for appellant,
contended:

1. The doctrine of choice between two dangers (if we may so call it) is not a very old one. It apparently took its rise in 1816, in the case of *Jones v. Boyce*, 1 Stark. 493, for, in his opinion in that case, Lord Ellenborough says that is the first of the kind that he recollects. There must be such danger that it would be obvious to the average reasonable man, if he were placed in the position; citing *Stokes v. Saltonstall*, 13 Pet. 181; *Ingalls v. Bills*, 9 Metc. 1; *Frink v. Potter*, 17 Ill. 406; *Coal Co. v. Healer*, 84 Id. 126; *Smith v. Railway Co.*, 30 Minn. 169; *Dimmey v. Railroad Co.*, 27 W. Va. 32; *Eckerd v. Railway Co.*, 70 Iowa, 353; *Solomon v. Railway Co.*, 103 N. Y. 437; *Railway Co. v. Ware*, 84 Ky. 267; *Reary v. Railway Co.*, 40 La. Ann. 32; *Rose v. Railway Co.*, 12 Atl. Rep. 78.

2. A carrier of passengers is not an insurer of their absolute safety. If a danger that could not be foreseen is encountered, the carrier cannot be held responsible for damages from it; citing *Railroad Co. v. Pillsbury,* 123 Ill. 9.

*H. C. Wisner,* for plaintiff, contended:

1. If one by actual negligence, or by failure to perform his duty to me, places me in a position where I may reasonably apprehend danger, and if, acting under the natural impulse received from the situation, and exercising ordinary care under the circumstances, I avoid the danger, and am injured, he is responsible for the injury, although had I not so acted I would not have been injured; citing Ang. Carr. §§ 547, 548; 2 Thomp. Neg. 1092; Shear. & R. Neg. § 28; *Stokes v. Saltonstall*, 13 Pet. 181; *Coal Co. v. Healer*, 84 Ill. 126; *Frink v. Potter*, 17 Id. 406; *Ingalls v. Bills*, 9 Metc. 1; *Railroad Co. v. Paulk*, 24 Ga. 356; *Wilson v. Railroad Co.*, 26 Minn. 280; *Railroad Co. v. Mowery*, 36 Ohio St. 418; *Buel v. Railroad Co.*, 31 N. Y. 314; *Twomley v. Railroad Co.*, 69 Id. 158.

2. A carrier must use at least ordinary care to preserve order and to prevent the commission of violence or of nuisances on his vehicle; citing Shear. & R. Neg. (4th ed.) § 512; *Flint v. Trans. Co.*, 34 Conn. 554.

3. It certainly is settled that appearances, exclamations, and descriptions of pain are competent in an examination to ascertain the condition of an injured person; citing *Johnson v. McKee*, 27 Mich. 471; *Elliott v. Van Buren*, 33 Id. 49; *Mayo v. Wright*, 63 Id. 42.

SHERWOOD, C. J. Mrs. Ashton, the plaintiff in this case, on February 10, 1887, lived on the south side of the Milwaukee railroad, near Ferry avenue, in the city of

Detroit, and was about 52 years of age. On the evening of that day, between 7 and 8 o'clock, she took a Russell-street car, at the corner of Brush and Alfred streets, to go to her home, which was a short distance beyond the end of the line, on Ferry avenue. The barns on Ferry avenue were some distance from the end of the line, and, when the car approached the barn, instead of carrying plaintiff on to the terminus of the line, the driver turned and drove the car into the barn a number of car-lengths, and when she left the car in the barn she was assailed by a man at the barn, who laid hold of her, and made indecent proposals to her, until she broke away from him, and ran to her home, thereby escaping from his further violence and insults.

The plaintiff further claims in her declaration that, on May 23 next following, she was again a passenger on this same line of cars, between 6 and 7 o'clock in the evening, at which time it was light outside. This time, as before, she intended to ride to the end of the line, and again the car turned into the barn, as it had on the evening in February. She remembered her experience at that time, and rang the bell to stop the car. Finding that it did not stop, she waited a second, and then went out on the rear platform, and got off while the car was in motion, being thrown by so doing, and injuring her knee. It was at this time so light that she could see far into the barn. For the injury to the knee she brought suit, and (after a demurrer to the declaration had been overruled) on the trial recovered $500. When she rang the bell the driver looked back, but drove on, not heeding the bell or making any effort to stop the car. The plea was the general issue. Defendant brings error.

Nine errors are assigned. The first is to the overruling of the demurrer. The defendant did not choose to stand

on this, but pleaded issuably after it was, overruled, and we cannot consider this further.

When Mrs. Ashton was on the stand as a witness she was asked (referring to her experience on February 10 in the barn):

"Will you state to the jury what happened when you alighted from the car in the barn?"

This was offered as a reason for justifying her leaving the car while in motion; to show that the place to which she was being taken by the company was one not only improper for ladies, but to the plaintiff it had proved to be dangerous. This is the second error assigned. The circuit judge was right in receiving the testimony. The fact that the driver did not respond to the ring of the bell was to the lady a suspicious circumstance, and to what extent she had cause to fear and did fear danger approaching as she neared the barn were proper subjects for the consideration of the jury, and were properly left to them.

The third error assigned was to the plaintiff's testifying that she had fear of insult and injury if taken to the barn, and to the effect that the insult she received there before had upon her. I have no doubt of the competency and relevancy of this testimony as it was received.

The fourth error assigned relates to the statements of Dr. Gustin, who was called to treat the plaintiff for the injuries she received from her fall on leaving the car. He stated she complained of pain in the knee. He was then asked:

"How did she describe the pain?" and, "How did she act, if you can describe her actions, not telling what she said?"

There could be no valid objection, in showing her injury, to making these inquiries. The physician could only inform the jury of her condition from what she told

him and what he saw himself, and the conclusion he reached from the examination he made, and the questions called for no more than this, and the answers were entirely proper. I think the question here raised was substantially passed upon in *Johnson v. McKee*, 27 Mich. 471; *Elliott v. Van Buren*, 33 Id. 49; *Mayo v. Wright*, 63 Id. 44 (29 N. W. Rep. 832).

Mr. Joseph Ashton, the husband of plaintiff, was sworn in the case and examined in behalf of plaintiff. He testified that he called at the barn the next morning after his wife was hurt, and saw the superintendent of the barn, and told him of the injury to his wife, and told him she would sue the company if she did not get better, and the superintendent said to him:

"I don't care how quick she sues."

He also testified that he called at the barn the night the accident occurred, after his wife had got home and told him of her injury, and saw some one come in the barn that he supposed to be the watchman, and asked him for the superintendent, and something as to the cars there, and what cars had gone out, and told about his wife being thrown from the car. This testimony was all objected to by counsel for the defendant, and is made the subject of defendant's fifth, sixth, and seventh assignments of error.

It is a little difficult to see in what manner the defendant could have been prejudiced by anything that was said on these occasions referred to. It certainly could not jeopardize the defendant's interests to give its agents notice that a lady had been insulted upon its premises, or that the plaintiff had sustained injury on its cars through the negligence of its servants in failing to stop the car at the proper place, and allow her to alight, and this was the substance of all the testimony objected to.

It may have been irrelevant, and erroneously received, but, so far as I have been able to discover, the error was a harmless one.

The defendant's eighth assignment of error relates to the rulings of the court in refusing to give the following six requests to charge:

"1. The jury are instructed that, under the pleadings and proofs, the plaintiff cannot recover.

"2. The rule of law is that to justify the plaintiff in descending from a moving car, and taking the risk of injury incident thereto, and, in case of injury resulting therefrom, hold the defendant liable therefor, such act must be for the purpose of avoiding an actual impending danger produced by the defendant for which it would be legally responsible, and the insult to the plaintiff on the evening of February 10. was not sufficient in law to justify the plaintiff in the belief that she was avoiding an actual impending danger, produced by the defendant, in descending from the car on the evening of May 23, as testified to by her.

"3. The mere act of turning the car into the barn would not justify the plaintiff's getting down from the moving car, and if the jury should find that on February 10, 1887, plaintiff had been insulted in the street-car barn by some unknown person, it would not in law be sufficient to justify her in descending from the moving car in the manner and under the circumstances testified to, and the defendant cannot be held liable therefor.

"4. Under the pleadings in this case, there can be no recovery on behalf of the plaintiff.

"5. The jury is instructed that even though they should believe that the plaintiff was insulted by some unknown person in the defendant's barn on the evening of February 10, as testified to by plaintiff, still that would not be sufficient in law to make the company liable for the injury sustained, if any, by getting off the car as testified to by her, on May 23.

"6. The plaintiff must show that the driver of the car on which she was riding, or the defendant, knew that she had been insulted on February 10 in the barn, and that there was reasonable ground for believing that, if she again went into the barn on May 23, she would be subject to some danger of like character."

The last error assigned is to that portion of the charge of the court reading as follows:

"If the plaintiff, on the evening of February 10, was carried by the car into the barn, and there assaulted as testified to by her, and, on account of that treatment, on the evening of May 23, seeing the car leaving the main track, and again turning to go into the barn, and she had reasonable cause to fear danger to herself, or a repetition of such treatment, and, controlled by such fear, to save herself, she attempted to get off the car while in motion, using such reasonable care and caution as she was able to use under the circumstances, and was then injured, the defendant is liable for the injury. That is true, gentlemen of the jury. If, as I said before, she used that reasonable caution at this time and place, as testified to by her, and she used that reasonable caution which a prudent person would use under the circumstances, fearing a repetition of the assault that was committed on February 10, then, gentlemen of the jury, of course that will remove the bar which otherwise would arise on account of what would be contributory negligence. She had a right to do it, and it was her duty to do it, if those things were so. If the defendant, by its wrongful act, put the plaintiff in a position where she had reasonable cause to apprehend danger to herself, she had the right to take such steps from said danger as, in her judgment, formed from the exigency of the moment, was best, and, if injured, defendant was responsible for the injury."

The first request was properly refused. The case was one for the jury.

In regard to the second request, I think whether or not the treatment the plaintiff received in the defendant's barn when she was taken there was sufficient to justify her belief that she was avoiding an actual impending danger, into which she was being taken, by leaving the car, was a question for the jury, and not for the court, and the request was properly refused. And what is here said applies with equal force to the defendant's third request, and equally justifies the ruling of the

78 MICH.—38.

circuit court.    In regard to the fourth request, as we have already said, the case was one for the jury, and the court would not have been justified in directing the verdict.

The fifth request should not have been given.    Independent of other facts in the case, it does not properly present to the jury the subject to which it refers, and its tendency would be to mislead, rather than enlighten, the jury, and it was properly refused.

In regard to the sixth request, it was of no consequence what the car-driver or his employer knew or believed in regard to the insult offered to the plaintiff in defendant's barn on February 10.    The real question is, assuming the testimony of the plaintiff to be true, what reasonable ground had she to expect she would receive insult or injury, and is she to be deemed negligent in doing the only thing which was left for her to do, by the action of the defendant, to avoid such insult and injury?    The request was properly refused.

The court committed no error in giving the charge he did, contained in the last assignment.    The case went to the jury under a fair and reasonable charge, and the record presents no error, and the judgment must be affirmed.

The other Justices concurred.