NELLIE E. PORTER v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

*Negligence—Railroad companies—Alighting from moving train.*

A railway company was in the habit of receiving and carrying passengers to and from the crossing of another road, without erecting a platform or station-house, but allowed passengers to board and leave trains at the statutory stopping place, 400 feet from the crossing. A passenger who had been accustomed to leave the train at *this* point heard the whistle for the crossing, and went to the car door, and as the train slowed up went out upon the platform to be ready to alight when it stopped, stepping down upon the lower step for that purpose. By reason of the turning of an air-cock the engineer was unable to control his train with the air-brakes, which had worked perfectly at other stopping places. He whistled for hand-brakes, which signal was promptly responded to, but without stopping the train. The passenger, when the train was about 166 feet from the crossing, jumped from the step, and was injured by the moving train. In a suit to recover the damages sustained it

was claimed that the company negligently failed to stop the train at the usual stopping place; that its servants furnished the plaintiff no assistance in alighting; and that defendant negligently started the train, with sudden violence, while plaintiff was attempting to alight. In passing upon these claims the following propositions are stated by the Court:

*a*—No negligence is shown by the fact that the train ran past the usual stopping place. The train was equipped with the usual air brakes required by law. They were in good condition when the train started out. The turning of the air-cock was the sole cause of the inability of the engineer to control the train. How it became turned is wholly unexplained. The mere fact that it was turned is not of itself evidence of negligence. If it was turned by an accident which ordinary prudence could not have foreseen and prevented, or if it was designedly turned by some one not in defendant's employ, the defendant cannot be held liable. The burden of proof was upon the plaintiff to show that it was turned through the negligence of the defendant. This she has failed to do.

*b*—All the trainmen were at the time at their posts of duty, attempting to stop the train, in obedience to the requirements of law The station had not been announced, nor had the train stopped. The plaintiff had not been invited to alight. It is fair to presume that, if the trainmen had been near her, they would have prevented her from alighting, instead of assisting her to alight. It would certainly have been their duty to use all proper means for that purpose while the train was in motion. Under these circumstances, this allegation of negligence falls.

*c*—There is some evidence tending to show that the train, after it had slowed down, suddenly started up. But one cannot read the record without being convinced that the train gradually slowed down, till it came to a full stop when across the track of the other road. Be that as it may, the record fails to show that the sudden starting of the train had anything to do with the accident to plaintiff. No witness testifies that it started up when she was in the act of alighting. Her own testimony is conclusive that it had not. Under the record, there was no proof of negligence, and the circuit judge should have so instructed the jury.

Error to Kent. (Grove, J.) Argued January 30, 1890. Decided April 11, 1890.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin* (*M. J. Smiley*, of counsel), for appellant.

*Montgomery & Bundy* and *George P. Wanty*, for plaintiff, contended:

1. The practice of defendant's trainmen other than those upon the train in question in this suit was material and very important, showing, as it did, that while the defendant company was accustomed to receive fare for transporting passengers from Grand Rapids to the Lake Shore crossing, and had established that as a station, having no platform or depot to accommodate passengers in alighting from or boarding trains, the defendant had yet required of the public that they should get out upon the platform or steps of the car as it approached the stopping place, and before the train came to a halt. This had a very important bearing upon the plaintiff's conduct, as well as upon the duty of the defendant to her. It shows that up to the very moment that she alighted from the train she was acting in precise accordance with the instructions, directions, and requirements of defendant's servants; and it certainly does not seem to be any answer to this to attempt to say that the particular servants in charge of this train were not the ones who had imposed the requirements upon her; citing *Hunn v. Railroad Co.*, 78 Mich. 513, 526; 2 Greenlf. Ev. § 252.

2. It was the statutory duty of the defendant to bring the train to a stop before crossing the track of the L. S. & M. S. Ry; citing How. Stat. § 3376; Act No. 174, Laws of 1883, § 14, Art. 4; and the neglect to observe a statutory duty is negligence; citing *Klanowski v. Railway Co.*, 57 Mich. 525; and, independent of this statutory duty, the defendant owed the duty to the plaintiff of bringing the train to a stop and affording her an opportunity to alight; citing Bishop, Non-cont. § 1100; and if by a failure to do so the plaintiff, in acting under the directions of the servants of the company previously given, was placed in a position where, in the exercise of common prudence, she was justified in making the attempt to alight, and through a sudden increase of the speed of the train was injured, this was entirely the fault of the defendant; and it can make no difference that various of the servants of the company performed different and independent acts in inducing this result; citing *Shannon v. Railroad Co.*, 78 Me. 52.

B. The undisputed evidence showed that when the Lake Shore crossing was reached the brakes were not in working order; that the cock had been turned in the middle of the train; but there was no evidence to show when this was done, and no

showing that any reasonable opportunity was afforded any one to turn the cock after leaving Grand Rapids. The testimony of defendant's witnesses was far from satisfactory, and certainly the jury were justified in finding that the train started out in this crippled condition, and this was certainly negligent; citing *Parsons v. Railroad Co.*, 113 N. Y. 355.

4. It was also a question for the jury as to whether the defendant was not guilty of negligence in failing to afford plaintiff assistance in alighting; citing *Allender v. Railroad Co.*, 43 Iowa, 276; and stopping the train or slackening the speed in such a manner that passengers cannot safely get on or off is an act of negligence; citing *Curtis v. Railroad Co.*, 27 Wis. 158; *Butcher v. Railroad Co.*, 98 N. Y. 128.

GRANT, J. Plaintiff recovered judgment in the court below for injuries sustained while jumping from a moving train on the defendant's road.

She purchased a ticket, August 7, 1888, and took the train from Grand Rapids to a place known as the "Lake Shore Crossing," near which she resided. At this point the defendant's track crossed that of the Lake Shore & Michigan Southern. The defendant was in the habit of receiving and carrying passengers to and from this crossing, but had not erected any platform or station-house. Its trains were required to stop 400 feet from the crossing, when passengers were allowed to leave and board trains. The fare was 10 cents, which plaintiff had paid. On nearing the station, the engineer of the train, which was a fast express, and running from 45 to 50 miles per hour, whistled at the usual and proper distance, and applied the air-brakes. These brakes failed to respond, and he immediately whistled for hand-brakes. The train hands, including the conductor, brakeman, and baggageman, immediately proceeded to set them. The engineer, upon passing the half-mile board and seeing that the train was not under control, again whistled for brakes, and reversed his engine. He did not succeed in stopping the train before reaching the crossing. The air-brakes were properly tested

before leaving Grand Rapids, and were found to be in good order. They also worked perfectly at other stopping places. They failed to work at the crossing because, in some way entirely unexplained, the air-cock between the second and third cars had been turned, shutting off the air. This made it impossible to stop the train at the usual place.

Plaintiff had been to the city upon a visit, and was returning home. She heard the whistle for the crossing. As the train commenced to slow up, she arose from her seat, and went to the door. As the train approached the usual stopping place, she saw that it was going too rapidly for her to alight. As it gradually grew slower, she went out on the platform, to be ready to alight when it stopped. She then stepped down upon the lower step. When 166 feet from the crossing, with a small valise and umbrella in one hand, holding on to the rail with the other, and facing towards the engine, she jumped from the step to the ground,—a distance of about two feet. She fell, and in some way her feet were struck by some portion of the train, and seriously injured. She testified that the speed of the train had gradually slackened; that, at the time she jumped, it was running very slowly, having the appearance of just coming to a halt; that she then attempted to alight because it seemed to her to be her only opportunity for doing so. She stood on the front steps of the third car from the rear, next to the smoker. She does not testify how her feet happened to come in contact with the moving train; for, upon falling, she says, she momentarily lost consciousness, but recovered it again before the train had passed.

One witness stood on the steps between the smoker and the baggage-car, and, knowing that something unusual had happened, as the train had passed the usual stopping

place, was leaning outwards, and looking to the rear. He saw plaintiff jump, with her valise and umbrella in her hand. He says that when she struck she wheeled around, and her feet struck the hind truck as they went by. This is the only testimony as to the manner of the injury, and is undoubtedly correct. The trucks did not pass over her feet; for her toes were not cut to pieces, crushed, or jammed. Some of the bones between the toes and ankle of the right foot were broken, and the flesh badly torn. The left foot was badly contused, but no bones were broken. Witnesses vary in their estimates of the speed of the train, from 2 to 15 miles per hour. It is apparent, from the manner in which the accident occurred after plaintiff jumped, and the injury inflicted, that the speed of the train was considerable. Plaintiff was 23 years old, a graduate of the Normal School, a school-teacher, accustomed to travel, and had repeatedly traveled over this part of the defendant's road.

Three grounds of negligence are alleged:

1. The defendant negligently failed to bring its train to a full stop at the usual place.

2. The defendant's servants furnished plaintiff no assistance in alighting from the train.

3. The defendant negligently started the train up, with sudden violence, while plaintiff was attempting to alight.

These are all combined in each count of the declaration, and together were undoubtedly intended to constitute the negligence against the defendant. We will, however, consider them separately.

1. No negligence is shown by the fact that the train ran past the usual stopping place. The train was equipped with the usual air-brakes required by law. They were in good condition when the train started out. The turning of the air-cock was the sole cause of the inability of the engineer to control the train. How it

became turned is wholly unexplained. The mere fact that it was turned is not of itself evidence of negligence. If it was turned by an accident which ordinary prudence could not have foreseen and prevented, or if it was designedly turned by some one not in defendant's employ, the defendant cannot be held liable. The burden of proof was upon the plaintiff to show that it was turned through the negligence of the defendant. This she has failed to do.

2. All the trainmen were at the time at their posts of duty, attempting to stop the train, in obedience to the requirements of law. The station had not been announced, nor had the train stopped. The plaintiff had not been invited to alight. It is fair to presume that, if the trainmen had been near her, they would have prevented her alighting, instead of assisting her to alight. It would certainly have been their duty to use all proper means for that purpose while the train was in motion. Under these circumstances, this allegation of negligence falls.

3. There is some evidence tending to show that the train, after it had slowed down, suddenly started up. But one cannot read the record without being convinced that the train gradually slowed down, till it came to a full stop when across the track of the other road. Be that as it may, the record fails to show that the sudden starting of the train had anything to do with the accident to plaintiff. No witness testifies that it started up when she was in the act of alighting. Her own testimony is conclusive that it had not. Under the record, there was no proof of negligence, and the circuit judge should have so instructed the jury. We express no opinion upon the question of contributory negligence.

Judgment reversed, and new trial ordered.

CHAMPLIN, C. J., and MORSE, J., concurred. LONG, J., did not sit.