ALMERON KRAATZ v. THE BRUSH ELECTRIC LIGHT COMPANY.

82    457
126   540
82    457
f139  ¹239

*Negligence—Crossing of electric light wires—Evidence—Hypothetical questions—Pleading—Demurrer—Waiver.*

1. Where a defendant does not elect to stand upon his demurrer when overruled, but pleads issuably, and goes to trial on the merits, he cannot raise the questions presented by the demurrer on the trial by objecting to the introduction of any evidence under the declaration. *Ashton v. Railway Co.*, 78 Mich. 587.

2. The negligence of an electric light company in so stringing its wires that those of one circuit cross those of another, so that a slight sagging of one wire will bring the two in contact, and in maintaining one as a live circuit while employés are set at work handling with bare hands the wires of the dead one so crossing those of the live circuit, is plainly apparent to any one.

3. Hypothetical questions directed to the effect of certain conditions of electric light wires as to the transfer of electricity are proper, although some of the conditions inquired into are not shown to exist in the particular case, but are shown to be caused by the same general principles that are supposed to govern electricity, and are therefore analogous to the case in hand.

4. An electric light company was sued by an employé for injuries sustained, as alleged, by reason of the improper stringing of its wires, whereby electricity was communicated from live to dead wires, and a witness was allowed to testify to a like condition of the wires some months after the accident, and to their change by him. And it is held that, while the condition of the wires immediately before, at the time, and soon after the accident was alone material, the evidence was not so prejudicial as to warrant a reversal *solely* because of its admission.

Error to Wayne. (Brevoort, J.) Argued June 26, 1890. Decided October 10, 1890.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Marston, Cowles & Jerome,* for appellant.

*Thomas Hislop* (*Elliot G. Stevenson,* of counsel), for plaintiff.

MORSE, J. The plaintiff recovered judgment in the Wayne circuit court for damages, upon the claim that he was severely and permanently injured and crippled by an electric shock while trimming lamps on an electric tower in Detroit, on August 19, 1886, at about 9 o'clock in the morning.

The plaintiff's evidence showed that he had been working for the defendant company as a trimmer from April, 1886, up to the day of the injury. On that day he had trimmed the lamps in 12 or 13 towers before he came to the tower at the corner of Hastings and Marion (now Winder) streets. He went up this tower and trimmed

three lamps, and had nearly completed the fourth one, when he received a shock, from which he claims his condition at the time of the trial resulted. It is not disputed but that he received or had a shock to his system of some kind while on this tower. The defense claimed that it was from paralysis, and not from electricity, and much medical evidence was introduced on both sides, one set of physicians claiming that his injuries were or might have been caused by an electric shock, and another set testifying that his condition was the result of paralysis. This question was settled in plaintiff's favor by the verdict of the jury.

This tower where the shock was received was upon the circuit numbered 11, and the wires should have been, and were supposed to be, at the time plaintiff was working upon the lamps, dead wires, or wires not charged with electricity. It is very plain from the whole evidence that, if the shock received by the plaintiff was from electricity, it was caused by live wires, or wires charged with an electric current, crossing the dead wires on circuit No. 11, and communicating by contact electricity to one or more of them. At this time circuit No. 4 was used for the purpose of furnishing electric light during the day-time, and the wires upon such circuit were consequently "live wires" at the time plaintiff was trimming the tower where he was injured. The wires in circuit No. 4 ran part of the way upon the same poles as the wires on circuit No. 11, to wit, from the works of the defendant to the corner of Shelby street and the alley, "And from the corner of Griswold street and Michigan avenue, the north-west corner on the east side of Michigan avenue, around Farnsworth's store, from Woodward avenue to the corner of Gratiot." There were crosses of these dead and live wires observed on the very day of the injury to plaintiff. It was shown that when the insulation of these wires is

worn off, and such insulation will wear off by friction as well as from other causes, so that the bare wires come together,—a live and a dead wire in contact,—the electricity will instantly be conveyed from the live to the dead wire along the whole line of the wire. It was also shown that the insulation had worn off in places on the wires; that the wires were improperly placed upon the poles so that the wires of one circuit crossed those of another, and that whenever they sagged, and sagging was to be expected, the wires of different circuits would touch one another.

The main objections to the verdict are directed against the declaration and proof in the case. The declaration was specially demurred to, and the demurrer overruled. The defendant then pleaded, and issue was joined upon the plea. The questions raised upon demurrer were again interposed upon the trial by the defendant objecting to the introduction of any evidence under the plaintiff's declaration.

It is claimed by plaintiff's counsel that, inasmuch as the defendant did not choose to stand upon its demurrer, but pleaded issuably after it was overruled, it could not thereafter again raise the questions settled by the overruling of the demurrer; citing *Ashton v. Railway Co.,* 78 Mich. 587 (44 N. W. Rep. 141); *Cicotte v. County of Wayne,* 44 Id. 173 (6 N. W. Rep. 236); *Peterson v. Fowler,* 76 Id. 258 (43 N. W. Rep. 10). See, also, *Wales v. Lyon,* 2 Mich. 276. This position is undoubtedly correct under all our previous holdings, and this disposes of all the questions raised upon the declaration.

It is strenuously argued that there was no evidence in the case showing how the accident occurred.[1]  As before intimated, we think differently. The first question to be determined by the jury was the nature of the shock that

[1] Counsel for appellant cited, in support of this proposition, *Porter v. Railway Co.,* 80 Mich. 156.

the plaintiff received. Was it from electricity or paralysis? If from the former, as the jury found, it was not difficult to ascertain how it occurred. The wires upon circuit No. 4 were live wires. They were in contact in more than one place that day, as shown by the proofs. The shock, it is true, might have been caused by turning the electric current upon circuit No. 11, through the negligence of the defendant's employés, or the act of a stranger, or perhaps from unavoidable accident, though the latter two suppositions are hardly entertainable; but the most probable cause was the transfer of electricity from some live wire on circuit No. 4 to some dead wire on circuit No. 11 at some of the crosses of these wires. The jury under the evidence had the right to infer that this was the cause, and they were not compelled to find what particular wire of circuit No. 4 came in contact with a wire of circuit No. 11, or with what particular wire of No. 11, nor at what precise spot this contact and transfer took place. This would be an impossibility, and such a chasing or tracing of lightning is not required. The negligence of the defendant company in so stringing its wires that the wires of one circuit cross another, so that a slight sagging of one wire will bring the two in contact, and maintaining one circuit as a live one while employés are set at work handling with bare hands the wires of the dead circuit so crossing the wires of the live circuit, is plainly apparent to any one. And there was no excuse for it, when we consider the deadly nature and effect of the electric current passing over the wires.

Fault is found with the charge of the court upon the assumption that the circuit judge put hypothetical suppositions to the jury, not based upon any testimony in the case, thereby misleading them, and permitting, and perhaps inducing, them to base a verdict upon one or more of such suppositions. We do not think the charge

is open to this objection. The evidence in the case took a wide range, and there was a great deal of theory advanced upon both sides in the testimony, as there necessarily will be in the study and contemplation of an agency as little understood by the great mass of people as is electricity, and of which it may well be said that the *savants* know but little. The court said, speaking of the defendant and its employés:

"Was it through defendant's negligence that the plaintiff was injured? Did they fail to turn off any of the live wires which connected with the tower located in the circuit on which this plaintiff was working (being designated as circuit No. 11), for the dead wires, so called, convey no electricity, and therefore could not possibly injure the plaintiff. It is only from the contact of the dead wire with a live wire, and remaining together for some time, or by the opening of some of the machinery at the principal place of business,—that is, where the electricity was manufactured on Third street, just below Fort street,—that he could have been injured. Does this evidence show you such was the case? Does this evidence show you that the wires were improperly placed upon the poles and upon some of the arms in such a manner that a live wire and a dead wire should come in contact with each other, and by such reason of coming in contact, and the crossing of the dead and the live wire, that an electric current was communicated to a line which carried it to the tower where the plaintiff was hurt? If you should so find that the plaintiff, when in the performance of his duty, had the right to do the work he was doing, and was in the exercise of due care to avoid injury, and if you should find that, by means of the electricity conveyed to the tower, in the manner stated, he received a shock that injured him, such as described, then the defendant would be liable to compensate the plaintiff for the injury he sustained; provided you find that the injury was done through the negligence of the defendant, and unless you can find it was done through the negligence of the defendant plaintiff cannot recover."

It is objected that there was no testimony tending to support the idea that the company failed to turn off the

electricity from any of the wires in circuit No. 11. While this may be so, there was evidence tending to show that one of the wires in circuit No. 11 was charged with electricity, and shocked the plaintiff. The court told the jury, and we think properly, under all the testimony, that this wire being charged with electricity could only happen in one of two ways: By the contact of the live wire of another circuit, or by the turning of electricity upon circuit No. 11. We do not think the jury were misled or the defendant prejudiced by this part of the charge. While there was no positive or direct evidence that any employé of the company turned or allowed the electric current to pass into any of the wires of circuit No. 11, yet the fact appeared, as found by the jury, that such current did enter one of such wires, and injured the plaintiff. It was proper for the jury to inquire into and determine how it got there, and no error was committed in allowing them to determine whether or not there was any testimony showing that the current came directly from the works of the company. And, in view of the testimony that circuit No. 4 was a live circuit that morning, and that its wires came in contact with the wires of No. 11, it is not at all probable that the jury found otherwise than that this contact caused the injury. The charge was eminently a fair one, and properly stated the law of the case.

The hypothetical questions permitted by the court were entirely proper. They were all directed to the effect of certain conditions of the wires as to the transfer of electricity, and although some of the conditions inquired into were not shown to exist in this particular case, yet they were all shown to be caused by the same general principles that are supposed to govern electricity, and were therefore analogous to the case in hand. Take for instance this question:

"Supposing that a live wire should come in contact, for instance, with a telephone wire, by the telephone wire settling down upon the electric light wire, what effect would that have upon the telephone wire?"

This question was entirely proper and competent. The telephone wire was used as an illustration, and although there was no claim or evidence of a telephone wire having anything to do with the plaintiff's injury, yet the effect upon a telephone wire would be the same as upon an electric light wire, and therefore the illustration used could not only do no harm, but was directly in line with and corresponding to the question at issue.

There was no substantial error in showing crosses of the wires at other places in the company's plant not connected with circuit No. 11, and the effect and causes of such crosses. This evidence was given to show that the crosses were caused by the same method of stringing the wires as on circuit No. 11; that such crosses, by the sagging of the wires, brought the wires in contact, which contact wore off the insulation and left the wires bare. When these facts were noted by an eye-witness, it certainly was competent for him to testify to it to show that the same causes on circuit No. 11 would cause the same effect as he noticed elsewhere, the conditions being exactly the same in both cases.

A witness, Dyer, was permitted to testify that in the fall of 1886, some months after the injury to plaintiff, he was employed by the superintendent and foreman of the defendant to change the wires on the poles, and put them in uniform shape, so that the wires would run straight, and not cross each other, which he did, and that before that time, from the time he went to work for the company, in the spring of 1886, the wires were in bad shape.

"One wire would run from the top arm, and probably

before the time it got four blocks or three blocks it would probably be on the lower arm, on the opposite side of the pole from where it started.

" *Q.* It would make a complete cross from side to side, and also from the top cross-arm to the bottom?

" *A.* Yes. There is some to-day the same way."

It is alleged that it was error to permit this witness to state that a change was made in the manner of stringing these wires after the injury to plaintiff, and we are referred by counsel for defendant to *Woodbury v. Owosso,* 64 Mich. 239, 243, and to *Grand Rapids, etc., R. R. Co. v. Huntley,* 38 Id. 540, as sustaining this allegation.

It was certainly immaterial what change was made in the stringing of these wires after the injury was accomplished, or what their condition was a month or so after the accident. What it was immediately before and at the time of the accident, and soon thereafter, before any change was made, was material. We can see no harm, however, in showing that the wires were strung as they were on the day of the injury, on April 1, 1886, and continued until some months later than the accident, in view of the fact that this method of stringing the wires was claimed to be the cause of the accident. If it was a defect, it was not incompetent to show how long it had existed before the injury, and what was the natural result of its existence. *Smith v. Sherwood Tp.,* 62 Mich. 159 (28 N. W. Rep. 806). While the nature of the change made was immaterial, as well as when it was made, we do not think that the admission of this evidence was so prejudicial in this case as to warrant a reversal of the judgment for that cause alone.

It is very plain to us that if the plaintiff received an electric shock it was caused entirely by the defective stringing of the wires, so that they crossed each other, and by sagging come often into contact, so often that

82 Mich.—30.

men were constantly kept employed along the line taking up the sagging or slack of the wires and endeavoring to remedy the natural results of such crossing of different circuits. It is not so plain to us that the injuries of plaintiff resulted entirely from electricity, but this matter has been twice settled by a jury in his favor, and it is not our province to disturb the verdict because of any doubts we may have upon a question of fact.

The judgment is affirmed, with costs.

The other Justices concurred.