KERN *v.* ARBEITER UNTERSTUETZUNGS VEREIN.[1]

1. PLEADING — DEMURRER — PLEADING OVER — QUESTIONS CONCLUDED.
   Where defendant pleads issuably after his demurrer is overruled he cannot thereafter again raise the questions settled by the ruling, on the demurrer.

2. MUTUAL BENEFIT ASSOCIATIONS — LOCAL SOCIETIES — WITHDRAWAL—SUIT BY MEMBERS—PARTIES.
   A local society of a mutual benefit association, by a majority of a quorum, voted to withdraw from the general association, and its officers assumed afterwards to audit and pay from its funds a death claim on a certificate issued by the general association, whereupon certain members of the society filed a bill to restrain such payment. *Held*, that the general association was not a necessary party.

3. SAME—RIGHT OF MEMBERS TO MAINTAIN SUIT.
   Allegations that it was the duty of the local officers to institute proceedings to collect the benefit from the general association, which they refused to do, but, on the contrary, assumed

[1]Rehearing denied May 12, 1905.

authority to pay it themselves from the funds of the local
society, state sufficient reasons why it was necessary for com-
plainants to sue, and sufficiently show that it would have
been an idle ceremony to demand that defendant's officers
act in the matter.

4. SAME — PAYMENT BY LOCAL SOCIETY — CONSTITUTIONAL PRO-
VISION.

A provision in the constitution of the local society authorizing
it to aid the widows and orphans of deceased members en-
titled to benefits could not be invoked to authorize the pay-
ment of the benefit.

5. SAME—CONTRACT OF INSURANCE—CONSTITUENTS.

The constitutions of the general association and of the constit-
uent local societies of a mutual benefit association, as well as
the benefit certificates, form parts of the insurance contracts
with the members.

6. SAME—BY-LAWS—CONSTITUTIONALITY.

Both the State (art. 4, § 43) and Federal (art. 1, § 10, and
Amend. 14) Constitutions are "laws," within 1 How. Stat.
chap. 164, § 4, giving mutual benefit associations power to
make regulations for their own government not contrary to
the laws of the United States or this State.

7. SAME—LOCAL SOCIETY—RIGHT TO WITHDRAW.

A local society of a mutual benefit association cannot, by reso-
lution, withdraw from the association and assume the pay-
ment of the benefit certificates issued to the members of the
local society by the association, where such action impairs
the obligations of the contracts of the association and society
with its members.

Appeal from Saginaw; Beach, J. Submitted Novem-
ber 17, 1904. (Docket No. 202.) Decided March 7,
1905.

Bill by Rudolph Kern and others against the Arbeiter
Unterstuetzungs Verein and others to restrain the pay-
ment of a benefit certificate. From a decree for complain-
ants, defendants appeal. Affirmed.

*F. E. Emerick* and *James H. Davitt*, for complain-
ants.

*L. T. Durand* and *F. A. Rockwith*, for defendants.

MOORE, C. J.   The complainants are members of the defendant corporation.   The bill in this case was filed to obtain an injunction restraining the Arbeiter Unterstuetzungs Verein, and the other defendants, who are its officers, from a claimed misappropriation of $500 which complainants and the other members of the verein had paid into its treasury.   A restraining order was issued on filing the bill, and at the hearing a final decree granting a perpetual injunction was rendered.   The appellant defendants bring the case here by appeal.

The circuit judge filed a written opinion, which states so clearly the issue involved that we quote from it as follows:

"Complainants filed a bill in this court against the defendant, asking for an injunction restraining the Arbeiter Unterstuetzungs Verein, of Saginaw City, Michigan, from paying to the beneficiaries of Charles Stocker moneys in their possession or under their control which had been paid in by members of the Arbeiter Unterstuetzungs Verein as dues or otherwise.

"It is claimed in the bill filed that the defendant the Arbeiter Unterstuetzungs Verein is a corporation organized under the laws of the State of Michigan, pursuant to Act No. 42 of the Public Acts of 1887.

"The Allgemeiner Arbeiter Bund, a State corporation, organized under the laws of the State of Michigan, is composed of the different arbeiter societies in the State of Michigan; being 81 similar associations.   No person can become a member of the State bund unless he is a member of the local association.   The bund issues to every member who is in good standing in one of the local societies a benefit certificate payable to the beneficiaries named in the certificate, upon the payment of annual dues to the local society of eight dollars; five dollars of the dues to belong to the death fund for bund dues, and three dollars to the general fund.

"It is further claimed that the defendant society, its trustees or officers, have no right to pay the claim or benefits out of any of the fund contributed as herein by the complainants or any members of the association.

"It is further claimed that Charles Stocker was a member in good standing on the 13th day of September, 1903;

that he died, and that his heirs or other lawful beneficiaries, after filing with the State bund proofs of death, are entitled to the death benefit of $500; that the heirs or beneficiaries have no right to demand or be paid this amount from the local society.

" It is further claimed that since the death of Charles Stocker a resolution was passed by the local society to pay the death-benefit claim out of the funds in the hands of the local society, which should be paid only by the State bund, as the local society never issued a benefit certificate to Charles Stocker, deceased; that there are now 944 members of the Arbeiter Unterstuetzungs Verein of Saginaw City, and that there are 9,500 members of the Allgemeiner Arbeiter Bund, being the State society; that if the local society pays its dues, as provided by the by-laws, to the State bund—being ten cents for each and all members in good standing—it would only cost the local society $94.40; but, if the full amount of said death benefit is paid by the local society, it will cost said local society $500, or more than ten times as much as they are legally liable to pay or contribute.

" It is further claimed that it would be a gross breach of trust by defendant, which would result in great and irreparable loss and damage to the complainant and other members of the local society, and that the bill is filed in behalf of the complainants and other members of the society, as they are too numerous to be made all parties complainant or defendant. And they pray that this suit may be treated and regarded as commenced and carried on in behalf of all such persons, as well as in the names of the complainants, and that the defendants may be perpetually restrained and enjoined from paying the heirs or other beneficiaries of the late Charles Stocker anything out of money in their possession or under their control which has been paid in by members of the Arbeiter Unterstuetzungs Verein, as dues or otherwise, and that the defendants be authorized, when properly required, to pay over to the Allgemeiner Arbeiter Bund of the State of Michigan, out of the funds in its hands, towards paying the Stocker benefit certificate, the sum of ten cents for each member of said defendant society.

" A demurrer to said bill was filed, and an order was made requiring the complainants to amend their bill, and the same was amended pursuant to said order.

"An answer has been filed by the defendants, claim-

ing that they have full power and authority to pay the benefit certificate, as they are no longer members of the State bund; that they are a separate and distinct corporation, and, under the constitution and by-laws of the State bund and the constitution and by-laws of the defendant society, they have a right to withdraw from said bund, as they have done, and they were not a member of the State bund when said bill was filed.  That the reason for withdrawing from said bund is the fact that for the past 15 years the local society has paid into the State bund, on account of benefits arising from the deaths of members of the several societies, the aggregate sum of $86,516.50, and that they have only received through the bund, as benefits, the sum of $57,400.  That they have paid $29,116.50 in excess of any and all benefits derived through the affiliation.

" It is conceded that the local society, as long as they remained a member of the State bund, have paid each year the sum of five dollars per member as dues, and they believe that it is for the best interests of the members of the local society to no longer remain a member and be affiliated with the State bund.  That a committee on constitution and by-laws was appointed, which on the 5th day of July, 1903, reported to the society, in writing, the changes that were necessary to be made for the purpose of carrying into effect the withdrawal of said local society from said bund. That due notice was given to all the members of the local society, by postal cards being sent to each member, and that only seven of the postal cards were returned as not having been received by the members to whom they were addressed.  That there were 309 members present at said meeting.  That 222 voted in favor of withdrawing from the State bund, and 78 voted against it.  That at the same meeting the report of the committee to amend the constitution and by-laws was adopted unanimously.  This meeting was held on August 5, 1903.  That due notice was given to the State bund, notifying them of the action taken by the local society, and that since that time they have had no further transaction or business connection with the State bund.  And that they have a right to pay the benefit certificate held by the heirs or beneficiaries of Charles Stocker, deceased.  That a resolution was passed directing the society to pay over from its treasury the sum of $500 for the benefit of the widow and children of said Charles Stocker, deceased.

" It is further claimed by the defendants that it is within the corporate power of the defendant corporation to take care of all such claims arising on account of the death of its members; that it is eminently fitting and proper that it should do so, under the act of its incorporation, its constitution, and by-laws.

"Testimony was taken in open court, and the only question for me to pass upon is, Has the local society a right to pay the death-benefit certificate that was issued by the State bund to Charles Stocker, in which bund the local society is a member, and Charles Stocker being a member of the local society? It is not claimed that the benefit certificate was ever surrendered and canceled by Charles Stocker in his lifetime, and a new certificate issued by the local society pursuant to their amended constitution and by-laws. If this had been done, it would present a different question. But what right has the local society to pay a certificate which is issued by the State bund, and where it is claimed by the complainants in this particular case they would be paying a little over five times as much in paying this certificate through the local society as they would through the State bund?"

The circuit judge held the local society had no right to pay the death-benefit certificate issued by the State society, and so decreed.

The claim of the defendants and appellants is that the decree is erroneous, for the following reasons:

1. That said bund is not made a party to this litigation; has not asked for any such decree; has not recognized said Stocker benefit certificate as a binding obligation upon it; and has made no assessment to meet it, nor taken any steps in the matter, unless to pay the expenses incurred on the part of complainants in this suit.

2. That three members of the board of trustees were omitted as parties to this suit.

3. That neither the civil nor the property rights of complainants are involved in this litigation, nor is any fraud charged or claimed by the bill.

4. That no request has been made to the defendant corporation, its officers, its board of trustees, or any of them, to have the action relative to said withdrawal, or to the passage of said resolution for said Stocker's dependents, either rescinded or reconsidered, or to have them, or either

of them, institute any legal proceedings whatever to test the legality thereof, or to restrain the payment of such money.

5. That the action of said society in withdrawing from said bund and revising its constitution, as stated, was legal and valid, and had the effect to then and there sever its relations with the bund, and to annul the obligations of the bund upon certificates, including the one in question.

6. That because of such withdrawal defendant corporation had the right to provide for the payment to the dependents of its members who held bund certificates at the time of withdrawal of the amount called for by such certificates, either by the issue of new certificates, or by the passage of a resolution to that effect before the new certificates had been prepared.

7. That under article 8 of the constitution of defendant corporation, providing:

"Section 1. Widows and orphans of deceased members who were entitled to benefits, shall, if they apply for the same and the treasury permits, be aided in the judgment of the society"—as well as under other provisions, the society possessed the power to pass the resolution in question for the Stocker dependents, or to give them any sum of money, or other relief whatsoever, which, in the judgment of the society, it was proper to afford, having in view its financial ability to do so. As already stated, the corporate power to do this is not questioned by the bill.

8. That the bill is multifarious, in seeking the distinct and different kinds of relief granted by the decree.

As to reasons 1 and 8, it may be said they were assigned as reasons in the demurrer, and were overruled by the judge. From that decision no appeal was taken.

In *Kraatz* v. *Electric Light Co.*, 82 Mich. 457, it was said:

"It is claimed by plaintiff's counsel that, inasmuch as the defendant did not choose to stand upon its demurrer, but pleaded issuably after it was overruled, it could not thereafter again raise the questions settled by the overruling of the demurrer; citing *Ashton* v. *Railway Co.*, 78 Mich. 587; *Cicotte* v. *County of Wayne*, 44 Mich. 173; *Peterson* v. *Fowler*, 76 Mich. 258. See, also, *Wales* v. *Lyon*, 2 Mich. 276. This position is undoubtedly correct,

under all our previous holdings, and this disposes of all the questions raised upon the declaration."

We think that principle applicable to the case at bar, where it may be said that it is not essential to a just decree between appellants and appellees that the bund be made a party.

As to reason 4, this appeared in the demurrer to the original bill, and the court held it good. Thereupon the complainants amended their bill by adding the following:

"Complainants did not ask defendant Arbeiter Unterstuetzungs Verein, or any of the other defendants named in the original bill in this cause, to institute suit or take any legal action to prevent the wrong and injury which they themselves threatened to do to these complainants and their rights, as set out in the original bill, because it would have been idle and useless to do so, for the reasons following: (a) Said defendants were duly notified of the death of Charles Stocker, and upon such notice it was their duty, through the president and secretary of the Arbeiter Unterstuetzungs Verein, to give notice of the same to the Allgemeiner Arbeiter Bund, but defendants neglected and refused to do so, and on the contrary passed the resolution referred to in paragraph 8 above; thus showing a definite and deliberate purpose on their part to ignore the rights of complainants as members of the Arbeiter Unterstuetzungs Verein, and as members of the Allgemeiner Arbeiter Bund of Michigan. (b) Because said defendants themselves then threatened and intended, and still threaten and intend, to do injury and wrong to complainants, which complainants ask this court to protect them from; and it would have been idle then, and would be idle now, to ask defendants to take legal action against themselves. (c) The rights which complainants ask this court to protect and enforce are not rights which belong or ever belonged to the defendant Arbeiter Unterstuetzungs Verein, or any other of the defendants, but, on the contrary, are rights which belong and always belonged to those complainants and the other members of the Arbeiter Unterstuetzungs Verein, in whose behalf, as well as in behalf of complainants, this bill is filed."

These allegations were sustained by the testimony. It is clear, too, from the attitude of the defendants in the

original bill, that they have no sympathy with the position taken by the complainants.

In 2 Cook on Stock, Stockh. & Corp. Law, § 741, it is said:

"There are occasions when the allegation that the stockholder has requested the directors to bring suit, and they have refused, may be omitted, since the request itself is not required. This occurs when the corporate management is under the control of the guilty parties. No request need then be made or alleged, since the guilty parties would not comply with the request; and, even if they did, the court would not allow them to conduct the suit against themselves. Nevertheless, instead of this allegation, the complainant must allege the facts which excuse such a demand or request to the directors, and these facts must be stated with particularity and definiteness."

See, also, Clark on Corp. pp. 395–398; *De Neufville* v. *Railway Co.*, 81 Fed. 13, 26 C. C. A. 306; *People's Savings Bank* v. *Building Co.*, 8 Colo. App. 354; *Flynn* v. *Third Nat. Bank*, 122 Mich. 642. We think the allegations of the amended bill of complaint and the testimony bring the case within these authorities.

As to reason 7, we think it very clear that, in taking the action it did, the defendant corporation was not proceeding under section 1, art. 8, of its constitution, which authorizes the giving of aid to widows and orphans, but was in fact undertaking to pay out of its funds, to the beneficiaries named in a certificate issued by the bund, the obligation named therein. This, then, brings us to the important question in the case; that is, Did the defendant corporation have the right, by a much less than a majority vote of its membership, to sever its relations with the State bund?

The Allgemeiner Arbeiter Bund of Michigan was founded January 1, 1870, and reincorporated in 1887 under Act No. 42 of that year (2 Comp. Laws 1897, §§ 7441–7446). Defendant Arbeiter Unterstuetzungs Verein was originally incorporated September 11, 1871, under chapter 58, 1 Comp. Laws 1857, and was reincorporated Decem-

ber 19, 1892, under chapter 164, 1 How. Stat. It became a member of the bund in 1872. One of the articles of reorganization (No. 4) contains the following:

" The foregoing is a reorganization of the Workingmen's Relief Association of Saginaw City, Michigan, incorporated 1871, and the persons executing the same are members of said Workingmen's Relief Association, being the society hereby reorganized as the Arbeiter Unterstuetzungs Verein."

When the Allgemeiner Arbeiter Bund was reorganized, in 1887, the defendant verein became one of the subscribers to the articles of reincorporation. At this time there were 48 local societies. This number had increased, when the defendant corporation sought to sever its connection with the bund, to 82, with upwards of 9,400 members. The defendant corporation had at the last-named time 940-odd members. The individuals composing the local societies are members of the bund from whom they receive insurance certificates, the bund being the insurer. For the purpose of providing a fund to pay this insurance, each corporate member of the union is required to pay upon the death of a member of the bund an amount equal to 10 cents for each of its own members.

Article 10 of the constitution of the bund provides:

" To have a surer rule and a payment of the bund moneys, the bund shall furnish, of sufficient numbers, printed heir or death certificates, to be sent to all of the local societies for their members. Each member shall, in this certificate, name or designate with the full name of the person or persons to whom after his death the money shall be paid.   *   *   *

" By the death of a member of the bund, the bund shall send, after the lapse of thirty days from the date of the official notice, including also a certificate accompanying said official notice, such sum of money to said society, payable to the order of the person named in the certificate, according to art. V, paragraph nine of the by-laws. If there are no legal heirs living, then the money on death fund reverts to the bund."

The certificates issued to the complainants, and to Mr.

Stocker as well, were issued under the provisions of this article. It will be seen that the members of the various local societies had the benefit of certificates of insurance issued by the bund, which embraced in its membership upwards of 9,000 persons. It will also be noted that, if one local society could go out without consulting the bund, any number might do so, and thus impair the security furnished by the insurance. If, too, the local society could undertake, with its membership of a little more than 900, to stand in the place of the bund, with its membership of more than 9,000, it would greatly lessen the value of the insurance.

Article 2 of the constitution of the bund, § 3, provides that "only an incorporated arbeiter mutual association, which warrants or guarantees aid to its members, in case of sickness or death of its members, shall be received into this association."

Article 2 of the verein constitution sets forth that the "object of the society is: Section 1. Assistance of the sick and suffering as also to provide for decent burial of its members. Sec. 2. To provide for the widows and orphans of deceased members. Sec. 3. Care for proper administration of the estates of deceased members. Sec. 4. To promote the social intercourse of the members."

The object and purpose of the bund are thus stated:

"*Third.* The object and purpose of such association is the general welfare of the members of the societies forming such association, and the extending to them and their families, in case of death, such material aid as may be fixed from time to time by the constitution and by-laws of the association."

While the purposes and objects of the verein are defined in subdivision 3, § 1, of chapter 164, 1 How. Stat., as follows:

"*Third.* The purposes and objects for which said corporation is formed which shall be to provide for the relief of distressed members, the visitation of the sick, the burial of the dead, and such other benevolent and worthy pur-

poses and objects as affect the members of the corporation, the period for which said corporation is formed, which period shall not exceed thirty years."

Counsel claim (we quote from the brief) that—

" By adopting their several constitutions, and thereby assuming towards each other and their members the relations and obligations described, these corporations have put a practical construction upon those statutes, and that construction gives no support to the conduct or contention of these defendants. On the contrary, it plainly forbids what they are attempting to do. No doubt, the constitution of the verein and the constitution of the bund, as well as the beneficiary certificate, form parts of such insurance contracts. Niblack on Acc. Ins. & Ben. Soc. (2d Ed.) p. 271; *Supreme Lodge Knights of Honor* v. *Nairn*, 60 Mich. 44; 3 Am. & Eng. Enc. Law (2d Ed.), p. 1059; *Union Mutual Ass'n* v. *Montgomery*, 70 Mich. 587; *Wist* v. *Grand Lodge A. O. U. W.*, 22 Or. 271.

" The peculiar character of the case makes it necessary to look upon both of these constitutions in this light, for each is so drawn with reference to the other as to require them to be considered together. And on the principle of the authorities cited, not only the articles of association of the bund, but also its constitution, is a part of the contract between it and the corporations associating. Thus viewed, they certainly do not warrant the secession of August 5th, nor the amendments of the verein constitution which followed. * * * The language in which such power is reserved must be read in the light of the statute under which the verein is incorporated. Section 4 of chapter 164 provides that:

" 'Said corporation shall have full power and authority to make and establish rules and regulations for the regulating and governing of the affairs and business of said corporation and members thereof, not contrary to the laws of the United States or this State, to decide as to the necessary qualifications for and who shall be eligible to membership therein, to provide for the election of members and to designate, elect, or appoint in such manner as they see fit, by their rules and regulations, such officers, under such names and style as they shall decide, who shall exercise such powers and such supervision, control, and management of the affairs of such corporations as shall be delegated to them respectively, by the constitution, rules, regulations, and by-laws of said corporations.'

"Both the State (article 4, § 43) and the Federal (article 1, § 10) Constitutions prohibit laws impairing the obligation of contracts, and under the latter the State is forbidden to deprive any person of property without due process of law.   Amend. 14.  These rules form a part of the laws of the United States and of this State, within the meaning of the above statute.   General power to make changes in the constitution and by-laws will not authorize amendments which materially impair prior insurance contracts or change the scheme of insurance.   Niblack on Acc. Ins. & Ben. Soc. (2d Ed.) §§ 25, 26, pp. 58–62; *Strauss* v. *Mutual Reserve Fund Life Ass'n*, 126 N. C. 971, 128 N. C. 465 (54 L. R. A. 605); *Bragaw* v. *Supreme Lodge Knights of Honor*, 128 N. C. 354 (54 L. R. A. 602); *Johnson* v. *Reformers*, 135 N. C. 385; *Pokrefky* v. *Firemen's Fund Ass'n*, 121 Mich. 456; *Starling* v. *Royal Templars*, 108 Mich. 440; *Wheeler* v. *Order of Iron Hall*, 110 Mich. 437; *Becker* v. *Insurance Co.*, 48 Mich. 610; *Kalbitzer* v. *Goodhue*, 52 W. Va. 435; *Union Ben. Society* v. *Martin*, 113 Ky. 25; *Hale* v. *Equitable Aid Union*, 168 Pa. St. 377; *Becker* v. *Benefit Society*, 144 Pa. St. 232; *Wist* v. *Grand Lodge A. O. U. W.*, 22 Or. 271."

It is apparent that the attempted action of the defendant corporation very greatly changes and impairs the obligations of the contract which resulted from the complainants becoming members of the local society, and receiving certificates of insurance from the bund.

It is said by counsel for defendant that article 16 of the constitution of the bund entitled the society to withdraw at its discretion.   It reads:

"This union cannot be dissolved as long as fifteen associations belong to it, and each association which steps out of the union of the 'Allgemeiner Arbeiter Bund' declares thereby that it gives up all claim to the property or possessions."

We think this should be read in connection with sections 41 and 42 of article 9, which read:

"If an association should not pay its pledges within two months, it is the duty of the treasurer to make it known to such association, and if the association does not pay its

pledge within a month after said notice, it becomes the duty of the president to suspend said association.

" If at any time an association of the union is suspended and fails within four months to comply with the pledge toward the union, the said association shall be dropped by the executive committee of the union. It has, however, the privilege of appeal to the union."

When so read, we do not think it can be said that it was contemplated any local society could withdraw at its discretion.

The decree is affirmed.

CARPENTER, GRANT, MONTGOMERY, and HOOKER, JJ., concurred.